[No. A018018. Sixth Dist. Mar. 27, 1985.]

HERBERT L. SWEATT et al., Plaintiffs and Respondents, v.
FORECLOSURE CO., INC., Defendant and Appellant.

274

## COUNSEL

Brenda Costello for Defendant and Appellant.

Nancy Sweatt, in pro. per., and Popelka, Allard, McCowan & Jones for Plaintiffs and Respondents.

## OPINION

**BRAUER, J.**—This case involves Civil Code section 2924c as it read in 1982 and 1983.[1] That section is a part of the statutory scheme providing for nonjudicial foreclosure of deeds of trust and mortgages. Specifically this appeal seeks an interpretation of the clause fixing the amount of the trustee's fee payable by a debtor in order to cure his default, and an answer to the question whether the statutory fees payable in nonjudicial foreclosures still apply when the parties to the deed of trust invoke judicial assistance because of a dispute between them. What follows is also relevant to the current wording of the section.

On November 25, 1981, appellant The Foreclosure Co. as trustee recorded a notice of default reciting arrearages of $2,800.98 due under the secured

---

[1]We granted rehearing on our own motion in order to delete a statement in the original opinion unnecessary to the decision. We also made other minor modifications.

promissory note executed by respondents Sweatt. By letter of January 15, 1982, The Foreclosure Co. itemized its claim including a trustee's fee of $262.78. On February 24, 1982, the Sweatts commenced an action in the trial court to enjoin the foreclosure proceedings, contending inter alia that certain installment payments had been made but not credited and others credited against principal rather than interest. The Sweatts also challenged the computation of the trustee's fee. A temporary restraining order issued. Subsequently, at a pendente lite injunction hearing, a balance was struck, the note was brought current, and the Sweatts were reinstated. ▮ At that hearing, the trial judge awarded The Foreclosure Co. $150 in trustee's fees rather than the $262.78 requested; and he reconfirmed his ruling upon motion for reconsideration. The appeal is from that ruling, which was a part of the pendente lite injunction order. All other issues were consensually resolved, and the Sweatts dismissed the action subsequent to the filing of the notice of appeal.

▮ As enacted in 1981, effective January 1, 1982,[2] the pertinent portion of section 2924c of the Civil Code read as follows: ". . . the trustor . . . at any time within three months of the recording of the notice of default under such deed of trust or mortgage, if the power of sale is therein to be exercised, or, otherwise at any time prior to entry of the decree of foreclosure, may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount then due under the terms of such deed of trust or mortgage and the obligation secured thereby (including costs and expenses actually incurred in enforcing the terms of such obligation, deed of trust or mortgage, and trustee's or attorney's fees not exceeding one hundred fifty dollars ($150) in case of a mortgage or a deed of trust or one half of 1 percent of the entire unpaid principal sum secured, whichever is greater) other than such portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing . . . ." The Foreclosure Co.'s position is simply that the unpaid principal sum due on the note was $52,556.54 at the time foreclosure was initiated; therefore it was entitled to a trustee's fee of ½ of 1 percent of that sum or $262.78. The Sweatts, on the other hand, while not appealing from the trial court's decision, contend that the words ". . . other than such portion of principal as would not then be due had no default occurred, . . ." modify the preceding language dealing with the computation of the costs and fees. They insist therefore that the base for the fee computation is the amount in default and not the entire unpaid principal sum secured. In the alternative, they take the position that the trial judge had the discretion to award whatever he considered reasonable.

---

[2]Even though the notice of default was recorded November 25, 1981, this case was tried below and argued in this court as if the 1982 version of section 2924c of the Civil Code applied.

With reference to the interpretation of the statute, the Sweatts entirely disregard the parentheses, their purpose and effect. It is apparent that the parentheses separate two discrete topics. The clause preceding and that following the parentheses address the amount of principal and interest the debtor must pay in order to cure the default. For reasons best known to them, the legislative draftsmen inserted a different subject into the middle of that discussion, namely the costs, expenses and fees payable as a condition to reinstatement, but they set it off by parentheses.

Thus, a debtor must make two types of payments: 1) ". . . the entire amount then due under the terms of such deed of trust or mortgage . . . (words dealing with costs and fees) . . . other than such portion of principal as would not then be due had no default occurred . . ." and 2) ". . . including costs and expenses actually incurred in enforcing the terms of such obligation . . . and trustee's or attorney's fees not exceeding $150.00 . . . or one-half of 1 percent of the entire principal sum secured, whichever is greater."

In short, within the three months period, a debtor may reinstate the note and deed of trust by discharging the arrearages and paying the actual foreclosure costs as well as the specified trustee's fees.

The foregoing analysis is corroborated by Legislative Counsel's Digest to Assembly Bill No. 191 (Frazee) which accomplished the 1981 amendment to section 2924c of the Civil Code. That digest was physically attached to the bill, and was in front of each legislator as he voted.[3] It states unequivocally: "This bill would instead require payment of costs and expenses actually incurred and trustee's or attorney's fees not exceeding $150 or ½ of 1% of the unpaid principal sum, whichever is greater."

Additional light is shed on the legislative intent by the 1983 revision of the section (eff. Jan. 1, 1984) which is only partly successful in its endeavor to make the wording of the enactment less ponderous. The words before and after the parentheses remain unchanged. The language between the parentheses now reads: "including reasonable costs and expenses, subject to the provisions of subdivision (c) of this section, which are actually incurred in enforcing the terms of such obligation, deed of trust or mortgage, and trustee's or attorney's fees, subject to the provisions of subdivision (d) of this section." New subdivision (d) specifies the amount of the fees and emphasizes in four places that the fee is based on a certain percentage of "the unpaid principal sum secured." It would now be hard to contend that the after-parentheses language in subdivision (a) modifies and governs the

---

[3]Joint Rules of the Senate and Assembly, California Legislature (1981), rule 8.5.

fee computation set forth in a different subdivision. The 1983 amendment was obviously declaratory of existing law with regard to the base for computing the fee as it made no change except in the percentage of the unpaid sum utilized in the fee determination.[4]

To summarize, in order to cure a default and to reinstate the obligation in a nonjudicial foreclosure proceeding, a debtor must pay, in addition to such other sums specified by law, a trustee's or attorney's fee determined by the statute-set percentage of the unpaid principal sum secured with a floor of $150.[5]

 But it does not follow that the same principle applies once the parties fall under the chancellor's foot.[6] Section 2924c of the Civil Code deals with the situation in which a default is undisputed in fact and amount, but the law for obvious public policy reasons wishes to give a debtor the opportunity to avoid a forfeiture. Pursuing that policy, the courts have fashioned rules to protect the debtor, one of them being that the notice of default will be strictly construed and must correctly set forth the amounts required to cure the default. (*Miller* v. *Cote* (1982) 127 Cal.App.3d 888, 894 [179 Cal.Rptr. 753]; *System Inv. Corp.* v. *Union Bank* (1971) 21 Cal.App.3d 137, 152-153 [98 Cal.Rptr. 735].) In the case at bench, there was a dispute as to two installment payments aggregating $900 which the Sweatts claimed were made but not properly credited. On the other hand, even if the Sweatts' position had been accepted, there would still have been a default. The injunction hearing was somewhat confusing and inconclusive; but the trial judge certainly did not view the Sweatts' position as being entirely without merit. He was relieved of the need to make a ruling as the parties struck a balance, and the Sweatts agreed to pay it. Under those circumstances, the court did not abuse its discretion in awarding a trustee's fee of $150 rather than $262.78.

---

[4]The statute was again amended in 1984 in particulars not here relevant. (Stats. 1984, ch. 919 and Stats. 1984, ch. 1730.)

[5]We are not called upon to decide whether, under the 1981 amendment, the maximum trustee's fee permitted by law may be charged in every case. To give an extreme example, may a trustee's fee of $50,000 (one-half of 1 percent) be charged if a $10 million note is reinstated the day after the notice of default is filed? But since the 1983 amendment went into effect, section 2924c of the Civil Code has provided that "Any charge for trustee's or attorney's fees authorized by this subdivision shall be conclusively presumed to be lawful and valid where such charge does not exceed the amounts authorized herein."

[6]"For law we have a measure, know what to trust to; equity is according to the conscience of him that is chancellor, and as that is larger or narrower, so is equity. 'Tis all one as if they should make the standard for the measure we call a foot, a chancellor's foot; what an uncertain measure would this be? One chancellor has a long foot, another a short foot, a third an indifferent foot: 'tis the same thing in the chancellor's conscience." John Selden (1584-1654) Table Talk, Selden Society (1927) at page 43, London, Quaritch.

Lastly, the Sweatts seek sanctions against The Foreclosure Co. for pursuing a frivolous appeal. They contend, aside from raising some untenable points, that the case is moot because a notice of rescission of the declaration of default was recorded shortly after the hearing on the injunction pendente lite and prior to the filing of the motion for reconsideration, and because the Sweatts dismissed the entire injunction proceeding shortly after the appeal was perfected. As a separate ground, the Sweatts label the appeal vexatious and oppressive in that the amount in controversy is only $112. The costs of appealing of course greatly exceed that sum which, the Sweatts assert, is not collectible in any event as the notice of default has been rescinded.

In a proceeding that may otherwise be deemed moot, an appellate court has discretion to resolve an issue of continuing public interest that is likely to recur in other cases. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193].) It is a source of wonder that a statute as frequently utilized as it is awkwardly worded has received so little published judicial interpretation, and the provision here in issue none at all. Moreover, it was the Sweatts who first challenged the clause in question. They may not complain if a corporate trustee now presses for binding instruction when he undoubtedly has many similar foreclosures pending. The appeal is not frivolous.

The judgment is affirmed.

Panelli, P. J., and Agliano, J., concurred.